Case 2:21-mc-00107-PKH   Document 9   Filed 12/21/21   Page 1 of 11 PageID #: 166

FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS

Dec 21, 2021

OFFICE OF THE CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

UNITED STATES OF AMERICA                             PLAINTIFF/GARNISHOR

v.                          Case No. 2:21-mc-107 PKH

OSCAR AMOS STILLEY                                              DEFENDANT

v.

CORNERSTONE STRUCTURAL ENGINEERING, INC.                        GARNISHEE

**DEFENDANT OSCAR STILLEY'S MOTION FOR RECONSIDERATION OF THE DENIAL OF MOTION TO QUASH [DOCKET #8]**

Comes now Defendant Oscar Stilley (Stilley) and for his motion to reconsider the Court's order denying Stilley's motion to quash, and states:

**I.    This Court saved the government from responding to Stilley's motion to quash.**

This is a miscellaneous action opened for the purpose of addressing a motion to quash a garnishment issued in Northern District of Oklahoma (OKND) 4:09-cr-43 SPF.  Stilley entered appearance in this action on 12-13-2021.

This Court on 12-14-2021 in [Docket #8](Docket #8) denied Stilley's motion to quash, admittedly without requiring any response from the government.  The Court opined that a response would be a useless act, since Stilley could not under any circumstances prevail.  The Court also denied Stilley's request for CM/ECF filing privileges, on ground that Stilley, as a disbarred attorney, is not bound by the rules of ethics applicable to attorneys.  Since Stilley "owes no such professional obligations to the Court or to opposing counsel..." the Court concluded that Stilley might abuse these privileges.  How Stilley might possibly "abuse" CM/ECF filing privileges, or why an abusive filer would not be just as abusive without CM/ECF, was not explained.

1

**II.     Professional ethics are front and center in this case, but it's not about the filing privileges of a non-lawyer.**

This Court admits that Stilley alleges ethical violations, including the presentation of perjured or merely false evidence.  Dkt. 8, pg. 4.  Such conduct, if true, constitutes a plain violation of Arkansas Rule of Professional Conduct 3.3, *Candor to the Tribunal*, which provides in pertinent parts:

> Rule 3.3. **Candor Toward the Tribunal**.
> (a) A lawyer shall not knowingly:
>
> (1) make a false statement of fact or law to a tribunal; or **fail to correct a false statement of material fact** or law previously made to the tribunal by the lawyer;
>
> (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or
>
> (3) **offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures including, if necessary, disclosure to the tribunal.** A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.
>
> (b) A lawyer who represents a client in an adjudicative proceeding and who knows that a person intends to engage, is engaging or had engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including if necessary, disclosure to the tribunal.
> (Emphases added)

The comments to this rule include the following:

> **Remedial Measures**
> [10] Having offered material evidence in the belief that it was true, a lawyer may subsequently come to know that the evidence is false. Or, **a lawyer may be surprised** when the lawyer's client, or another witness called by the lawyer, offers testimony the lawyer knows to be false, either during the lawyer's direct examination or in response to cross-examination by the opposing lawyer. In such situations or if the lawyer knows of the falsity of testimony elicited from the client during a deposition, the lawyer must take

> **reasonable remedial measures**. In such situations, the advocate's proper course is to *remonstrate with the client* confidentially, advise the client of the **lawyer's duty of candor** to the tribunal and seek the client's cooperation with respect to the withdrawal or correction of the false statements or evidence. If that fails, the advocate must take further remedial action. If withdrawal from the representation is not permitted or will not undo the effect of the false evidence, **the advocate must make such disclosure to the tribunal as is reasonably necessary to remedy the situation**, even if doing so requires the lawyer to reveal information that otherwise would be protected by Rule 1.6. It is *for the tribunal then to determine* what should be done–making a statement about the matter to the trier of fact, ordering a mistrial or perhaps nothing.
> (Emphases added)

### III. All federal judges have an obligation to take "appropriate action" upon receipt of reliable information indicating that a lawyer has violated applicable ethical rules.

Federal judges have written for themselves the **Code of Conduct for Federal Judges** (CCJF). The language of CCFJ, concerning the reporting of "bad apples" in the bar or on the bench, is materially different from that applicable to attorneys. Canon 3B.(6) states the rule, as follows:

> (6) A judge should take *appropriate action* upon receipt of reliable information indicating the likelihood that *a judge's conduct contravened this Code*, that a judicial employee's conduct contravened the Code of Conduct for Judicial Employees, or that *a lawyer violated applicable rules of professional conduct*.
> (Emphases added)

The comment to Canon 3B.(6) states in pertinent part:

> **Public confidence** in the integrity and impartiality of the judiciary is promoted when judges take *appropriate action* based on *reliable information* of **likely** misconduct. Appropriate action depends on the circumstances, but the overarching goal of such action should be to *prevent harm* to those affected by the misconduct and to prevent recurrence.
> ........
> Appropriate action may include direct communication with the judge or lawyer, other direct action if available, reporting the conduct to the appropriate authorities... Appropriate action may also include responding to a subpoena to testify or **otherwise cooperating with or participating in judicial or lawyer disciplinary authorities**.
> (Emphases added)

On three separate occasions Stilley has stated facts, under penalty of perjury, which if true

prove that Charles Anthony O'Reilly has committed numerous violations of applicable attorney codes of professional conduct. Since coming to home confinement, the first was Docket 694 in OKND 4:09-43, a verified motion for sentence reduction pursuant to 18 USC 3582(c)(1) filed 5-12-2021, supported by amongst other things a Timeline and a brief, Docket #695. O'Reilly responded, but without either admitting or denying the specific facts alleged in the motion.

Stilley made it perfectly clear that he first wanted an ***honest record*** upon which the Court could proceed. Take a look at the proposed preliminary order Stilley submitted to the Court, on the 3582(c) motion for reduction. Stilley made it plain that he didn't want an immediate favorable decision. Stilley wanted ***truth***. He didn't get it.

Second, Stilley filed his motion to set aside or correct his sentence under 28 USC 2255, on 9-1-2021. Dkt. 701. The government moved to dismiss the motion, which Judge Friot granted 11-4-2021. Dkt. 719.

Third, Stilley filed the instant motion to quash garnishment. Once again Stilley alleged facts sufficient to show that the criminal judgment and commitment order against Stilley is a pure unadulterated fraud. No ethical attorney could enforce this judgment.

O'Reilly is now bound by the California Rules of Professional Conduct (CRPC) because his bar license was issued in California, and by the Oklahoma Rules of Professional Conduct (ORCP) because Oklahoma was the place of prosecution. If he appears in this proceeding, he is also bound to comply with the Arkansas Rules of Professional Conduct (ARPC).

So far so good Mr. O'Reilly has evaded his ethical obligation to present and maintain an honest and ethical record in Stilley's criminal case.

**IV.    Following the standard legal procedures will change the result - just not the way**

**most people think.**

This Court in its opinion and order, docket #8, maintains that nothing could change the outcome of this motion to quash. If this is true, why not simply require the government to present the Court with an honest record, or at least forthright and unambiguous answers to the 77 paragraphs set forth under oath in the motion to quash? This should not be difficult. Stilley has already filed a 58 page "Timeline" to assist the Court and any party, in determining where evidence should be located - if it exists at all.

Stilley objected to plans to send his money to Oklahoma state tax authorities. Dkt. 722, pg. 9. (The supporting brief is Dkt. 723.)Stilley's Judgment and Commitment Order (Dkt. 338 at page 5) is plain. Stilley is ordered to pay money to IRS/RACS and the Arkansas Department of Finance and Administration. Stilley is ***not*** ordered to pay money to anyone else. So why can't Stilley get a judicial resolution of this question? Why won't this Court even order the government to *state their intentions* in this regard? Is this outcome likewise *set in stone*?

This Court knows exactly what Stilley is trying to do. Stilley is trying to *make O'Reilly talk*. Everybody at this table knows that as soon as O'Reilly has to answer the hard questions, it's game over - he loses, truth wins, and the ankle monitor comes off Stilley's leg. O'Reilly's judgment is the product of perjury, fraud, reckless disregard for the truth, and garden variety factual errors.

Please understand why the ethical obligations of this Court are so important. ORCP Rule 8.3 Reporting Professional Misconduct provides as follows:

> (a) A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct ***that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects***, shall inform the appropriate

      professional authority.
      (Emphasis added)

Arkansas has a similar rule, by the same number, with slightly different wording but the same meaning.

Stilley has stated facts demonstrating his actual innocence, under penalty of perjury, with citations to the record - not once but repeatedly. Stilley has repeatedly demonstrated that his interest is in *first* getting an honest record, and *then* getting a ruling on that record. See e.g. [Docket 699, pages 23-24](#),[1] where Stilley asked Judge Friot to level the playing field first, by getting an honest record, then rule on the motion. The tenor of the ruling actually means less than the honest record.

Why? Stilley's conviction and punishment can't survive an honest record. O'Reilly can't save, much less *enforce*, his fraudulent judgment without the ability to consistently evade his ethical duty to *tell the truth*. Once the record is made to conform to the truth, the only question remaining is how long it takes to "corner" Mr. O'Reilly, and hold him to account for his lawlessness.

As previously explained, Mr. O'Reilly has at the very minimum a duty to conform his conduct to *both* the CRPC and the ORCP. Stilley presumes that this Court is reasonably well versed in the Arkansas ethical rules. Stilley cannot reasonably expect this Court to know the subtlety and nuance of the ethical rules of California and Oklahoma.

Both California and Oklahoma have provisions that simply don't exist in the ARPC. For example, ARCP, dealing with the ethical duties of prosecutors, stops with subsection (e). Not so

---

[1]     Filemark header page numbers 27-28. The difference is due to non-countable pages at the beginning, such as the table of contents.

in California and Oklahoma. Consider the following provision from the California rules, which is absent in the Arkansas rules:

> Rule 3.8 **Special Responsibilities of a Prosecutor** (California)
> ....................
> (f) When a prosecutor knows* of new, credible and material evidence creating a **reasonable* likelihood that a convicted defendant did not commit an offense of which the defendant was convicted,** the prosecutor shall:
> (1) promptly disclose that evidence to an appropriate court or authority, and
> (2) if the conviction was obtained in the prosecutor's jurisdiction,
> (i) promptly disclose that evidence to the defendant unless a court authorizes delay, and
> (ii) **undertake further investigation, or make reasonable* efforts to cause an investigation, to determine whether the defendant was convicted of an offense that the defendant did not commit.**
>
> (g) When a prosecutor knows* of clear and convincing evidence establishing that a defendant in the prosecutor's jurisdiction was convicted of an offense that the defendant did not commit, the prosecutor shall *seek to remedy the conviction*.
> (Emphases added)

Consider once again the relevant comments to the California rules:

> [7] When a prosecutor knows* of new, credible and material evidence creating a reasonable* likelihood that a person* outside the prosecutor's jurisdiction was convicted of a crime that the person* did not commit, paragraph (f) requires prompt disclosure to the court or other appropriate authority, such as the chief prosecutor of the jurisdiction where the conviction occurred. If the conviction was obtained in the prosecutor's jurisdiction, paragraph (f) requires the prosecutor to examine the evidence and undertake further investigation to determine whether the defendant is in fact innocent or make reasonable* efforts to cause **another** appropriate authority to undertake the necessary investigation, and to *promptly disclose the evidence to the court and*, absent court authorized delay, *to the defendant*. Disclosure to a represented defendant must be made through the defendant's counsel, and, in the case of an unrepresented defendant, would ordinarily be accompanied by a request to a court for the appointment of counsel to assist the defendant in taking such legal measures as may be appropriate. (See rule 4.2.)
>
> [8] Under paragraph (g), **once the prosecutor knows*** of clear and convincing evidence that the defendant was convicted of an offense that the defendant did not commit, *the prosecutor must seek to remedy the conviction*. Depending upon the circumstances, steps to remedy the conviction could include disclosure of the evidence

to the defendant, requesting that the court appoint counsel for an unrepresented indigent defendant and, where appropriate, ***notifying the court that the prosecutor has knowledge that the defendant did not commit the offense of which the defendant was convicted.***
(Emphasis added)

There is no duty imposed upon defendants, by this rule. There is no absurd "one year statute of limitations." There are no sneaky tricks allowed, to evade the requirements of the rule. Even if the defendant was altogether docile, and defended not at all, or even falsely admitted the crime, these specific *ethical duties remain*.

V. **Other courts have encouraged prosecutors to waive defenses, to in pursuit of ethics, honor, and justice.**

Stilley at pages 3-8 of Docket #713 cited *Robinson v. Ledezma*, 399 Fed. Appx. 329, 329-330 (10th Cir. 2010), in which the 10th Circuit 3 judge panel encouraged the government to waive the one year statute of limitations, because the government, the district court, and defense counsel all missed the fact that the defendant was punished in excess of the maximum punishment allowed by law.

Stilley didn't sleep on his rights. Promptly after the guilty verdict Stilley asked for the transcript, so he could work on appellate arguments as to liability. After running the clock, Judge Stephen P. Friot denied Stilley's unopposed motion - on the basis of theories utterly incompatible with the written official policies of the federal judiciary. Explanation and support of this claim can be found at pages 61-65 of Docket 701.

Stilley fought for the duration of his 10 years, 4 months, 10 days behind bars, for the wherewithal to do the one direct appeal to which he was entitled. The government claims that out of more than 50 attempts at administrative remedies, Stilley exhausted exactly ***none***. Docket

8

701, pg. 70-79.  This is a preposterous conclusion, proves that the entire Department of Justice-Federal Bureau of Prisons (DOJ-FBOP) administrative remedy system is a pure unadulterated fraud, and proves that Stilley's enemies don't honestly believe that he is guilty of any crime.

Stilley is able to produce the instant pleading only because he was sent to home confinement due to the threat of covid-19.  It is impossible to do this work at any of the 4 prison compounds at which Stilley has been confined.  In fact Stilley was never allowed to receive or possess the official filed record, the docket items, at the time of sentencing consisting of approximately 4,000 pages.

Without the official court record, the smartest lawyer on planet earth cannot draft a competent appellate brief.

The criminal punishment of innocent persons is antithetical to a free and rational society.  The punishment of persons in excess of that which is allowed by law, is likewise antithetical to a free and rational society.  Cheating inmates out of access to the wherewithal for the one direct appeal to which they are entitled, and then raising statute of limitations to defeat a motion under 28 USC 2255, is antithetical to a free and rational society.

The knowing punishment of innocent persons burns political capital, and referent power, like an F-16 on max afterburners burns jet fuel.

Stilley has made every reasonable attempt to respect this Court's time.  Stilley could have copied and pasted the 81 page motion under 28 USC 2255, with modest edits, based on the ARWD local rules.  ARWD has no page limitation for motions or briefs.  Stilley didn't do that because he respects this Court's person, time, and office.  Stilley wrote a 10 page motion (Dkt. 722) and 41 page brief (Dkt. 723) because he deemed that amount of text appropriate to

reasonably protect his rights in the garnishment proceedings before the Court.

VI. **This Court should order the government to forthrightly respond, as part of "appropriate action" under judicial ethics rules.**

This Court by its opinion and order didn't just save the government from having to respond to Stilley's motion. This Court saved the government from having to do so much as *enter appearance* in this miscellaneous case.

The question arises. Is this "appropriate action" within the meaning of CCJC 3B.(6)? If so, this Court's decision is very easy. Just say words to the effect "The Court has read Stilley's motion for reconsideration, and finds no valid reason to change its decision."

Stilley cannot concede that completely insulating the government from even having to leave fingerprints on this proceeding is "appropriate action," within the meaning of the CCJC.

Stilley proposes the following, as a means whereby this Court can substantially discharge its ethical and legal obligations, with minimal imposition upon the Court's time.

Order the government to respond to the 77 paragraphs of Stilley's motion, plus the paragraphs of Grounds 1-3 of [Docket #701](Docket #701). That's only 3 out of 13 grounds. Order the government to respond paragraph by paragraph, in reasonable detail, with references to the record where appropriate. When that's done, rule as the Court sees fit.
WHEREFORE, Stilley respectfully requests that this Court order the government to respond paragraph by paragraph, with citations to the record where appropriate, to Stilley's motion to quash garnishment, plus such grounds of Docket #701 in OKND 4:09-cr-43 as the Court deems appropriate; that the Court thereupon rule on the motion to quash; and for such other and further relief as may be appropriate, whether or not specifically requested.

Respectfully submitted,

By: /s/ Oscar Stilley  December 21, 2021
Oscar Stilley
10600 N Highway 59
Cedarville, AR 72932-9246
479.384.2303 mobile
479.401.2615 fax
oscarstilley@gmail.com

CERTIFICATE OF SERVICE

Oscar Stilley hereby certifies that he caused this pleading to be filed via CM/ECF, and therefore caused to be served all parties to this litigation, who have CM/ECF filing privileges.  Stilley has also served a copy of this pleading on Garnishee (with Garnishee's permission) by email at john@csengineeringinc.com.

11